UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

WILLIAM CHANCE STEPHENS,

        Petitioner,        Case No. 2:18-cv-197

v.        Honorable Paul L. Maloney

DUNCAN MACLAREN,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. <u>Factual allegations</u>

Petitioner William Chance Stephens is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Following a five-day jury trial in the Van Buren County Circuit Court, Petitioner was convicted of voluntary manslaughter, Mich. Comp. Laws § 750.321. The underlying facts at trial, as described by the Michigan Court of Appeals, are as follows:

> Defendant's conviction resulted from the stabbing death of the victim on the night of October 1, 2013, in Paw Paw, Michigan. The victim called 911 immediately after the stabbing and was later found lying on the ground in the parking lot of a Marathon gas station. He had sustained a total of five stab wounds, including two to his chest, two to his back, and one to his arm. Before ultimately succumbing to his wounds, the victim was able to tell responding police officers that "new boy" was the person who stabbed him. He further indicated that the stabbing had occurred across the street at the Lakeside Inn hotel. Police officers searched the victim's cellular telephone and found a contact named "new boy." That telephone number belonged to defendant. The officers then located defendant's hotel room that evening, but defendant was nowhere to be found. The hotel room showed no obvious signs of a struggle, and no blood was found in the room. Defendant was located the next morning in Battle Creek. The murder weapon was found in his vehicle, and he was observed to have blood stains on his clothing. He did not have any visible injuries. Defendant was later interviewed by police and charged with open murder.
>
> Defendant testified at trial that he killed the victim in self-defense. He explained that he had been in town for work and had met the victim two days before the stabbing after being given his name and number from a prostitute from whom he was soliciting narcotics. Defendant recalled purchasing approximately $1,000 worth of cocaine through a series of transactions with the victim that first night before purchasing more on the night of the stabbing. On the night of the stabbing, the victim accompanied defendant to defendant's hotel room. While the victim used the bathroom, defendant stepped out of the room for a brief moment. When he returned to the room, defendant realized that his briefcase, with money in it, was missing, and that the victim had it in the bathroom. A confrontation ensued, during which defendant claimed that the victim pinned him against the wall before reaching for his pocket, ostensibly to retrieve a weapon. Fearing for his life, defendant grabbed a knife out of his back pocket and stabbed the victim twice in the chest. He admitted taking a "third swipe" at the victim as he fled the room, and

further admitted chasing the victim out of the hotel and into the street before fleeing the scene. He could not recall stabbing the victim in the back.

Defendant acknowledged that his trial testimony was inconsistent with the version of events he gave to police immediately after his arrest. Specifically, he acknowledged fixating on the robbery during his interview and repeatedly exclaiming that he "just wanted [his] money back," without fully explaining the circumstances of the stabbing or that he was in fear for his life. Defendant further acknowledged that he never actually saw the victim with a weapon on the night of the stabbing.

(Mich. Ct. App. Op., ECF No. 1-2, PageID.29-30.) On June 23, 2014, the trial court sentenced Petitioner to a prison term of 11 years, 10 months to 22 years, 6 months.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the following issues in the brief filed by appellate counsel:

I. Was [Petitioner] denied the effective assistance of counsel guaranteed by the federal and state constitutions . . . where trial counsel failed to investigate the deceased's character history of drug dealing, carrying a concealed weapon and assaulting a police officer when it would have been significant corroboration of [Petitioner's] theory of self-defense; where trial counsel failed to investigate the hotel room for evidence demonstrating why there was no sign of a struggle; and where trial counsel failed to object to the trial court's denial of the jurys [sic] request to view the crime scene?

II. Did the trial court err and violate [Petitioner's] substantial constitutional right to due process when it denied the jury's request to visit the crime scene after deliberations had begun and further err when it made its denial without the presence or waiver of the [Petitioner]?

III. Did the trial court reversibly err when it permitted the prosecution to introduce a gruesome video of the victim running, bleeding, panicking and dying because its probative value was greatly outweighed by unfairly prejudicial effect and likelihood to confuse the issues and mislead the jury and should have been excluded under MRE 403.

IV. Should [Petitioner's] conviction for manslaughter be reversed, because the evidence presented was legally insufficient to prove beyond a reasonable doubt that [Petitioner] did not defend himself?

(Br. in Supp. of Pet., ECF No. 1-1, PageID.15-16.) Petitioner filed a pro per Standard 4 brief, *see* Mich. Ct. Admin. Order No. 2004-06, in which he raised additional claims:

3

> V. Should [Petitioner's] conviction for voluntary manslaughter be reversed, because the evidence presented was legally insufficient to prove beyond a reasonable doubt that [Petitioner] did not act in self-defense?
>
> VI. Was [Petitioner] denied effective assistance of counsel guaranteed by federal and state constitutions . . . where trial counsel failed to familiarize himself with applicable case law, failed to object to improper jury instructions and jury charges, failed to object to prosecutions [sic] cumulative instances of misconduct of: denigrating defendant, shifting of burden of proof, misrepresenting evidence, misstating the evidence, constant inference [sic] and speculation of events unsupported by the evidence. Defense counsel failed to object to the use of immaterial and irrelevant evidence that was introduced only to induce sympathy, passion and prejudice from the jury. When the objection to these many instances would have protected [Petitioner's] right to "due process" and prohibited the jury from having to consider and weigh matters outside of the issue in dispute[] and given [Petitioner] a "fair trial."

(*Id.*, PageID.16-17.) In a lengthy, unpublished opinion issued on December 10, 2015, the court of appeals denied all appellate grounds and affirmed the conviction. (Mich. Ct. App., ECF No. 1-2, PageID.29-36.)

Petitioner sought leave to appeal to the Michigan Supreme Court, raising all six grounds presented to the Michigan Court of Appeals. In addition, he filed two motions, seeking to add two additional issues:

> VII. [Petitioner] is entitled to a *Crosby* remand for resentencing under *Lockridge*, because the court engaged in judicial factfinding that increased his sentencing range in violation of his Sixth Amendment rights.
>
> VIII. Ineffective assistance of Appellete [sic] Counsel where Appellete [sic] Counsel failed to establish and argue that trial counsel failed to present a defense under the proper legal authority of "Castle Doctrine" where the fact, evidence and testimony supported this substantial defense.

(Br. in Supp. of Pet, ECF No. 1-1, PageID.18.) In an order issued on June 28, 2016, the supreme court granted the motions to add issues and addressed the application for leave to appeal. In lieu of granting leave to appeal, the supreme court remanded the case to the trial court to determine if it would have imposed the same sentence absent the unconstitutional mandatory requirement of

the sentencing guidelines. If so, the trial court was instructed to resentence Petitioner. The supreme court denied leave to appeal on the remaining issues. (6/28/16 Mich. Order, ECF No. 1-3, PageID.38.)

Petitioner chose to forego resentencing in the trial court. On February 8, 2017, Petitioner filed a motion for relief from judgment in the Van Buren County Circuit Court. In his motion, Petitioner raised two issues:

I.  Was defense counsel . . . ineffective for failing to object to unredacted extrinsic material that was viewed by the jury?

II. Did the court allowing extrinsic material to be viewed by the jury, violate [Petitioner's] right to confrontation and cross-examination?

(Br. in Supp. of Pet., ECF No. 1-1, PageID.19.) The trial court denied the motion on March 17, 2017, concluding that the first issue was procedurally barred because it could have been raised on appeal, Mich. Ct. R. 6.508(D)(3), and the second issue was procedurally barred because it was raised on direct appeal and decided against Petitioner, Mich. Ct. R. 6.508(D)(2). The court concluded that Petitioner had failed to show either cause and prejudice or actual innocence sufficient to overcome the procedural bar. (3/17/17 Cir. Ct. Op. & Order, ECF No. 1-4, PageID.40-46.) Ten days later, Petitioner filed a motion to amend his motion for relief from judgment. In addition, on April 6, 2017, he filed a motion for reconsideration of the March 17, 2017, order denying relief from judgment. The trial court denied both motions in an order issued on April 26, 2017. (4/26/17 Cir. Ct. Order, ECF No. 1-5, PageID.48-50.)

Petitioner sought leave to appeal to both the Michigan Court of Appeals and the Michigan Supreme Court, presenting three issues:

I.  Trial court erred in not holding evidentiary hearing to establish *Stokes* violation where evidence was inadmissible depriving Sixth and Fifth Amendment rights.

II. Trial court erred in not conduct [sic] evidentiary hearing on the issue of ineffective assistance of counsel where the record proved defendant was deprived rights secured by the Constitution's [sic] and the Michigan Supreme Court case of the law.

III. Trial court erred in declining to recuse or disqualify review of its court order, due to interest in the case on the subject matter held before its court that render review on its own errors which affected [Petitioner's] review on post-conviction relief proceedings.

(Br. in Supp. of Pet., ECF No. 1-1, PageID.19-20.) The court of appeals denied leave to appeal on September 15, 2017, and the supreme court denied leave to appeal on July 3, 2018.

Petitioner, through counsel filed his habeas corpus petition on November 1, 2018. The petition raises one ground for relief, as follows:

I. WHETHER TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO REQUEST PROPER JURY INSTRUCTIONS ON SELF-DEFENSE.

(Br. in Supp. of Pet., ECF No. 1-1, PageID.10.)

II. <u>AEDPA standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

7

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Ineffective Assistance of Counsel

Petitioner argues that trial counsel was ineffective in failing to request an appropriate jury instruction on self-defense. According to Petitioner's brief in support of the petition, the trial court gave the following instructions regarding self-defense:

> The defendant claims that he acted in lawful self-defense. A person has the right to use force or even take a life to defend himself under certain circumstances. If a person acts in lawful self-defense, that person's actions are justified and he is not guilty.
>
> You should consider all of the evidence and use the following rules to decide whether the defendant acted in lawful self-defense. Remember to judge the defendant's conduct according to how the circumstances appeared to him at the time he acted.
>
> First, at the time he acted, the defendant must have honestly and reasonably believed that he was in danger of being killed or seriously injured. If the defendant's belief was honest and reasonable, he could act immediately to defend himself even if it turned out later that he was wrong about how much danger he was in. In deciding if the defendant's belief was honest and reasonable, you should consider all of the circumstances as they appeared to the defendant at the time.
>
> Second, a person may not kill or seriously injure another person just to protect himself against what seems like a threat of only minor injury. The defendant must have been afraid of death or serious physical injury. When you decide if the defendant was afraid of one or more of these, you should consider all of the circumstances: The conditions of the people involved, including their relative strength; whether the other person was armed with a dangerous weapon or had some other means of injuring the defendant; the nature of the other person's attack or

threat; whether the defendant knew about any previous violent attacks or threats made by the other person.

Third, at the time he acted, the defendant must have honestly and reasonably believed that what he did was immediately necessary. Under the law, a person may only use as much force as he thinks is necessary at the time to protect himself. When you decide whether the amount of force used seemed to be necessary, you may consider whether the defendant knew about any other ways of protecting himself, but you may also consider how the excitement of the moment affected the choice the defendant made.

*A person can use deadly force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed he needed to use force in self-defense.*

However, *a person is never required to retreat if attacked in his own home*, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if a person if subject to a sudden, fierce, and violent attack.

Further, a person is not required to retreat if the person has not or is not engaged in the commission of a crime at the time the deadly force is used, and has a legal right to be where the person is at the time, and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm of the person or another.

The defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

(Br. in Supp. of Pet., ECF No. 1-1, PageID.13-15 (quoting Tr IV, 16-18 (emphasis added by Petitioner).) Petitioner argues that the italicized paragraph and phrase concerning the duty to retreat should not have been given, because Michigan Criminal Jury Instruction 7.16 states that the paragraph "'should not be given if the duty to retreat is not in dispute.'" (Br. in Supp. of Pet., ECF No. 1-1, PageID.13 (quoting Mich. Crim. Jury Instruction 7.16).) In addition, Petitioner asserts that, absent an instruction that the hotel room was Petitioner's "home" for purposes of the instructions, the instruction was incomplete. Petitioner maintains that counsel was ineffective in

9

failing to object to the instruction as given and failing to insist on a supplemental instruction that the hotel room was Petitioner's home for purposes of the duty to retreat.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument

that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's claim on the ground that the jury instruction, as given, properly reflected Michigan law:

> Defendant . . . argues that his trial counsel was ineffective for failing to familiarize himself with the "facts, circumstances, and laws" involved in this case, specifically those pertaining to self-defense and the "castle-doctrine." We disagree. Defendant's only claim in this regard is that, had his trial counsel been more familiar with the "castle doctrine," he would have objected to an erroneous jury instruction regarding the duty to retreat. However, our review of the record reveals that the instructions on self-defense given by the trial court were an almost verbatim reading of the Model Criminal Jury Instructions (M Crim JIs), specifically M Crim JI 7.15, 7.16, and 7.20. The instructions accurately stated the law in Michigan, see MCL 780.971 *et seq.* (Self-Defense Act), fairly presented the issues to be tried, and they adequately protected defendant's rights, *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014). Any objection by defendant's trial counsel thus would have been futile. Trial counsel is not ineffective for failing to raise a meritless objection. See *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

(12/10/15 Mich. Ct. App. Op., ECF No. 1-2, PageID.33.)

Petitioner cites no established Supreme Court precedent in support of his claim that the jury instruction was improper. Nor could he make such a showing. In *Phillips v. Million*, 374 F.3d 395 (6th Cir. 2004), the Sixth Circuit recognized that no clearly established Supreme Court precedent requires a state court to issue an instruction on self-defense, *id.* at 397-98, much less what such an instruction must say.

Instead, Petitioner's arguments about the adequacy of the self-defense instruction are based solely on state law. He argues only (1) that the Michigan model criminal jury instructions advised that the "duty to retreat" instruction not be given under the circumstances of his case and

11

(2) that, under Michigan law, he was entitled to a special instruction that the motel room qualified as Petitioner's "home" for purposes of the self-defense instruction.

Applying state law, the court of appeals concluded that the jury instruction was proper. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (observing that the Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law") (internal quotations and citations omitted).) The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).[1]

Because the jury instruction, as given, properly captured Michigan law on self-defense, any objection by counsel would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007);

---

[1] Indeed, even were the Court to consider the correctness of the state's determination of its own law, it would reach the same conclusion. The principle case on which Petitioner relies and on which the standard instruction was based, *People v. Richardson*, 803 N.W.2d 302 (Mich. 2011), upheld a jury instruction effectively identical to the one given at Petitioner's trial. The *Richardson* court concluded that the retreat instruction should not be given when the duty to retreat is not disputed (i.e., when the defendant is in his own home). The court, however, found no error in the case, because, although the jury was instructed about the duty to retreat, it also was instructed that a defendant does not have a duty to retreat when attacked in his home. *Id.* at 305.

*Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

As a consequence, Petitioner fails to demonstrate that trial counsel was ineffective with respect to the jury instruction on self-defense – much less to overcome the double deference owed to the determination of the Michigan Court of Appeals.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated: December 20, 2018                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge

14